IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

ATLAS COMPUTERS, INC.,

        Debtor.

Filed / Docketed
April 29, 2010

Case No. 07-11665-M
Chapter 7

## MEMORANDUM OPINION

A corporation is a creature of the law. It has no heartbeat. It has no intellectual capacity. It harbors no ill will or malicious intent. A corporation acts only through its employees and agents. At issue is the validity of a claim made against the debtor corporation based upon theories of fraud and conversion. The question is whether a corporation may be held responsible for the allegedly tortious conduct of its agents and employees when those agents and employees have been released from liability as a matter of Oklahoma law. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052, which is made applicable to this contested matter by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a). The allowance or disallowance of a claim against the estate is a core proceeding as defined by 28 U.S.C.A. § 157(b)(2)(B).

### Procedural Background

Atlas Computers, Inc. ("Atlas" or "Debtor") filed an original petition for relief under Chapter

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*.

7 of the Bankruptcy Code with this Court on August 28, 2007. Steven W. Soulé ("Trustee" or "Soulé") was appointed to serve as trustee. December 14, 2007, was established as the deadline for filing claims in the case.

On December 14, 2007, Ryan Finley, Bradley Finley, and Perry Quality Services, LLC (collectively, the "Claimants"), filed their proof of claim in the amount of $1,091,787 (the "Finley Claim").[2] The basis for the claim is identified as "Conversion Business" [sic]. Attached to this claim is a copy of a petition filed in the District Court of Tulsa County, Oklahoma, in which the Claimants are the plaintiffs, and several individuals and entities, including the Debtor, are defendants.

On December 9, 2009, Milos Milenkovic ("Milenkovic"), an equity security holder of the Debtor, filed an objection to the Finley Claim (the "Objection").[3] The Objection was filed with the consent and support of Soulé. On January 22, 2010, Milenkovic filed a motion for summary judgment with respect to the Objection. A scheduling order was issued with respect to the motion for summary judgment requiring the Claimants to respond to the motion for summary judgment on or before March 4, 2010. Claimants filed a timely response.

One day earlier, on March 3, 2010, Claimants filed an amended claim (the "Amended Finley Claim").[4] The Amended Finley Claim is also in the amount of $1,091,787, and lists as its basis "Conversion Tortious Interf" [sic]. No state court pleadings are attached to the Amended Finley Claim. Instead, the Amended Finley Claim describes their claim as follows:

---

[2] *Claim No. 6-1.*

[3] *Docket No. 44.*

[4] *Claim No. 6-3.*

> Brad Finley and Ryan Finley formed Perry Quality Services, LLC. The Finleys and Perry quality [sic] Services, LLC developed new, novel, unique, and valuable information regarding wireless communications. The debtor was generally in the same business and falsely induced the creditors to sell a portion of the business of Perry Quality Services, LLC, and they did so. The debtor defrauded the creditors and converted their assets.
>
> Creditors are seeking documents and records in discovery to verify their claims. Such records are too voluminous to attach to the claim. In addition, some of the documents are in debtor's possession.[5]

After the parties completed their briefing, the Court set the motion for summary judgment for hearing, which took place on April 22, 2010. At that hearing, counsel for the Claimants stated on the record that the purpose of the Amended Finley Claim was not to expand any theories of recovery from those contained in the Finley Claim, but rather to "clarify" the theories of recovery relied upon by the Claimants. The matter is now ripe for decision.[6]

## Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7] "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

---

[5] *Claim No. 6-3 Part 2.*

[6] Just minutes prior to the hearing on the motion for summary judgment, the Claimants filed a motion for leave to file a "surresponse" [sic] to the final brief filed by Milenkovic. *See Docket No. 61.* The Court denied the motion, finding the request to be untimely, and further finding that all parties had been given ample opportunity to present their case.

[7] Fed. R. Civ. P. 56(c)(2), made applicable to this proceeding by Fed. R. Bank. P. 7056 and 9014(c).

party."[8] As the Supreme Court of the United Sates recently stated,

> [a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted).[9]

This standard was recognized by the Court of Appeals for the Tenth Circuit in *Price-Cornelison v. Brooks*.[10]

### Findings of Fact

The Claimants have chosen not to contest the statement of undisputed facts. Federal Rule of Civil Procedure 56(e)(2), made applicable in contested matters by Federal Rules of Bankruptcy Procedure 7056 and 9014(c), states that

> *Opposing Party's Obligation to Respond.* When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.[11]

Consistent with the national rule, our Local Rules provide that "[a]ll properly supported material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary

---

[8] *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487-88 (1984)).

[9] *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009).

[10] 524 F.3d 1103, 1120–21 (10th Cir. 2008).

[11] Fed. R. Civ. P. 56(e)(2).

judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material."[12]  Accordingly, the Court finds the following facts to be undisputed for purposes of this motion for summary judgment:

1. On March 10, 2004, Bradley M. Finley and Ryan K. Finley (the "Finleys") filed a lawsuit in the Tulsa County District Court against Debtor Atlas Computers, Inc. and others (the "First State Court Action").  The others included Milos Milenkovic, Neboisa Milenkovic, Verner Crisostomo, Eddie Rabson, and John D. Martens who were managers and an agent of Perry.

2. The verified petition filed in the First State Court Action contained claims entitled "Breach of Fiduciary Duty," "Tortuous [sic] Interference with Contractual Rights," "Breach of Agency," and "Wrongful Conversion."  The verified petition contained no claims of negligence against Atlas.

3. The Finleys alleged that the individual defendants "transferred assets and account receivables from Perry Quality Services, LLC to Atlas Computers, Inc."  The "wrongful transfer of assets from Perry Quality Services, LLC to Atlas Computers, Inc." was alleged to be a breach of fiduciary duty.

4. The Finleys further alleged that Debtor Atlas "intentionally and wrongfully accepted the transfer of assets from Perry Quality Services, LLC," that Atlas was "in possession of assets and account receivables belonging to Perry Quality Services, LLC," and that the Finleys had "suffered economic damages as a direct result of the Defendant Atlas Computers, Inc., having wrongfully acquired assets and receivables

---

[12] Bankr. N.D. Okla. LR 7056-1(B).

belonging to Perry Quality Services, LLC."

5. The defendants moved to dismiss the First State Court Action because it did not comply with Oklahoma's derivative claim statutes.

6. The Tulsa County District Court granted the motion to dismiss the First State Court Action on April 27, 2004.

7. On August 3, 2004, the Claimants filed a second action in the District Court in and for Tulsa County, Oklahoma naming the same defendants (the "Second State Court Action").[13]

8. The Finleys reasserted the same allegations that Atlas and the individual defendants had converted the assets of Perry Quality Services. The petition contained the same causes of action, and again contained no claim of negligence against Atlas.

9. In the Second State Court Action, Atlas served a set of interrogatories on the Finleys asking for detail about the nature of the claims being asserted. Interrogatory No. 2 inquired about assets that were wrongfully transferred from Perry to Atlas. The Finleys answered that all of the business assets of Perry had been wrongfully transferred, including "the Internet Customer base/list, employees with specialized knowledge, accounts receivable, the Bartnet Contract, the tower and other operating agreements, the trade names, and the equipment ...."

10. Interrogatory No. 7 asked for detail about the breach of fiduciary duty involved in "the wrongful transfer of assets from Perry" to Atlas. The Finleys again asserted that

---

[13] The Second State Court Action was brought by Ryan Finley and Bradley Finley, "individually and on behalf of Perry Quality Services, LLC." *Milenkovic Exhibit 4 at Docket No. 51-4.*

        Atlas had "wrongfully transferred the customers and accounts receivable of Perry," wrongfully transferred trade names, caused a "wrongful transfer of equipment and other assets, including but not limited to the authenticating software (RBS System), credit card software, ACH software, Quick-Books software, transmitting radios and various other equipment from Perry."

11. The wrongful transfer was alleged to have occurred in May or June of 2003.

12. Over three years after the first lawsuit, the Finleys filed an amended petition (the "Amended Petition") in the Second State Court Action on June 14, 2007. It is this Amended Petition that was attached to the Finley Claim.

13. The Amended Petition continued the previous allegations. Paragraph 16 alleged that "[t]he Defendants then methodically and swiftly misappropriated Perry Quality Services' trade secrets and other assets for the unauthorized use and benefit of the Defendants without any consideration of the proprietary interest with Perry Quality Services. The Defendants methodically and swiftly stripped away and looted all important assets, including trade secrets, for their benefit and to the detriment of Perry Quality Services."

14. Paragraphs 43 and 45 alleged that Atlas was "guilty of conversion of Plaintiffs' assets" and that the conversion was in utter disregard of their rights.

15. The Amended Petition contained no claim of negligence against Atlas.

16. On August 28, 2007, Atlas filed its Chapter 7 petition.

17. On October 9, 2007, Bradley Finley and Ryan Finley executed and filed a Dismissal Without Prejudice of the Second State Court Action stating that they "dismiss[ed]

without prejudice the within action in its entirety."

18.  Milenkovic was the sole owner of the Debtor at the time of the Chapter 7 filing. All findings of fact contained in the "Procedural Background" section of this Memorandum Opinion are incorporated into the findings of fact by this reference.

## Conclusions of Law

Milenkovic contends that the Amended Finley Claim is a simple tort claim against the employees of Atlas, and that any and all liability of Atlas that might exist arises under the doctrine of *respondeat superior*. Milenkovic further claims that, as a matter of Oklahoma law, any and all claims against the employees of Atlas have been fully and irrevocably released. Finally, Milenkovic argues that the release of the servant operates as a release of the master, thus rendering the Amended Finley Claim a nullity. The Claimants contend that their claims "are made directly against Atlas because of negligence and wrongful conduct" and that, as a result, any release of Atlas agents and/or employees is irrelevant.[14]

*The Nature of the Amended Finley Claim*

In the "summary explanation" attached to the Amended Finley Claim, the Claimants allege that "[t]he debtor defrauded the creditors and converted their assets."[15] In other words, the Amended Finley Claim sounds in two common law intentional torts: conversion and fraud.[16] Such a characterization is consistent with the allegations contained in the First State Court Action, the

---

[14] *Response of Ryan Finley and Bradley Finley to Motion for Summary Judgment on Objection of Milos Milenkovic, Docket No. 58*, at 5.

[15] *Claim No. 6-3 Part 2.*

[16] It is well established that torts such as fraud and conversion are <u>intentional</u> torts. *See e.g., Zumwalt v. Jones County Bd. of Supervisors,* 19 So. 3d 672, 689 (Miss. 2009) (conversion); *Carran v. Morgan*, 510 F. Supp. 2d 1053, 1060 (S.D. Fla. 2007) (fraud and conversion).

original petition in the Second State Court Action, the Amended Petition in the Second State Court Action, and the answers to discovery provided by Claimants in the Second State Court Action. There are no allegations of negligence in any of the pleadings from the First State Court Action or the Second State Court Action that have been made a part of the record before this Court. At oral argument on the motion for summary judgment, counsel for the Claimants admitted that Claimants did not seek to assert any new theories of recovery or expand the scope of their claim by filing the Amended Finley Claim.[17] The Court concludes that the Amended Finley Claim is based upon theories of common law fraud and conversion based upon the actions of the individuals identified in the various state court pleadings.

*The Nature of Atlas's Liability for any Tortious Actions of its Employees or Agents*

Construed in the light most favorable to the Claimants, the legal theory underlying their claim is that employees and/or agents of the Debtor committed fraud against the Claimants and/or caused assets in which they had an interest to be wrongfully transferred to the Debtor. The latter claim is commonly known as conversion, and was so designated by the Claimants in their state court pleadings.

The United States Court of Appeals for the Tenth Circuit has held that the liability of a corporation for the tortious acts of its agents or employees is founded upon the doctrine of *respondeat superior*:

> Since a corporation is only a legal entity, it cannot act or have a mental state by itself. *See* Fletcher Cyclopedia of the Law of Private Corporations § 4877

---

[17] In response to a question posed by the Court, counsel for the Claimants stated that the purpose of the Amended Finley Claim was to "clarify" the underlying bases for the claim. The Court fails to see how replacing an exhibit detailing specific causes of action with a vague statement that "the debtor defrauded the creditors and converted their assets" clarifies anything.

9

> (Perm.Ed.). It can only act through its officers and employees, and these acts are attributed to the corporation under basic principles of agency. When a corporation itself has a duty, like the nondelegable duty not to hire or retain dangerous employees, and breaches that duty through the acts or omissions of its employees, it is held *directly* liable for that negligence. In contrast, the doctrine of respondeat superior holds a corporation, as employer, liable for the torts of its employees acting in the course or scope of employment. *Handy v. City of Lawton,* 835 P.2d 870, 873 (Okla.1992) (ruling that employer is liable for harm inflicted while the agent is acting within the scope of employment and the act is an incident of the employee's service to the principal).[18]

The *Magnum* decision is binding upon this Court, and is, in any event, in the mainstream of thought on this issue.[19] The Court finds that, as a matter of law, any liability of Atlas under the Amended Finley Claim must arise, if at all, under the doctrine of *respondeat superior*.

*Release of the Individuals Under Oklahoma Law*

Claimants do not dispute that the allegedly wrongful actions at issue took place in May or June of 2003.[20] The First State Court Action was filed on March 10, 2004, well within the statutory time frame, and was dismissed on April 27, 2004. The Second State Court Action was filed on August 3, 2004, and dismissed without prejudice on October 9, 2007.

Oklahoma law provides for a two-year statute of limitations on tort claims,[21] and a three-year statute for breach of an oral or implied contract.[22] Since the actions at issue took place in mid-2003,

---

[18] *Magnum Foods, Inc. v. Cont'l Cas. Co.,* 36 F.3d 1491, 1499 (10th Cir. 1994).

[19] *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003); *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 161 (Okla. 2008).

[20] *Brief in Support of Motion for Summary Judgment, Docket No. 51*, at 5, Statement of Undisputed Fact 10.

[21] Okla. Stat. Ann. tit. 12, § 95(A)(3) (West 2000 and Supp. 2010).

[22] *Id.* § 95(A)(2).

10

the statute of limitations has run with respect to all individual defendants.[23] Oklahoma law provides for a one-year extension of time for the commencement of a subsequent action in cases where an action was timely commenced but not resolved on the merits (e.g., voluntarily dismissed).[24] As to the individual defendants, said time expired on October 9, 2008, one year after the Claimants dismissed the Second State Court Action. The running of the statute of limitations against the individual defendants coupled with the expiration of the one-year extension period operates as a full release of any claims that the Claimants may have had against said individuals.[25]

*The Effect of the Release of the Individuals Upon Atlas*

The Amended Finley Claim is predicated upon common law tort theory: *i.e.,* conversion and fraud. Under the law discussed *supra*, Atlas can only be held vicariously liable for the tortious conduct of its agents and employees. The agents and employees of Atlas have been released from any tort liability by operation of law. The question is whether the release of these individuals operates as a release of Atlas as a matter of law.

In determining the validity of a claim based upon state law, a bankruptcy court looks to the law of the state in question.[26] With respect to the issue presently before the Court, the Court finds

---

[23] Claimants argue that, pursuant to § 108(c) of the Bankruptcy Code, the statute of limitations as to claims against Atlas may have been tolled by the filing of this bankruptcy case. The Court offers no opinion on this issue, as it is not germane to the decision reached herein.

[24] Okla. Stat. Ann. tit. 12, § 100.

[25] *Sisk v. J.B. Hunt Transport, Inc.,* 81 P.3d 55, 60 (Okla. 2003) ("A bar that arises by force of law from a plaintiff's voluntary act of dismissal is as effective as any other form of express release that would extinguish the claim against the servant.").

[26] *Grogan v. Garner*, 498 U.S. 279, 283 (1991); *In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002) ("non-bankruptcy substantive law usually determines the existence of a claim") (citations omitted).

the case of *Sisk v. J.B. Hunt Transport, Inc.* instructive.[27] In that case, Sisk was hit by a truck owned by J.B. Hunt Transport, Inc. ("Hunt") and driven by Aristille Courville ("Courville"), an employee of Hunt. Sisk filed an action sounding in negligence against both Hunt and Courville, dismissed the action without prejudice, and later refiled the action against both parties, relying upon the one-year grace period provided under the Oklahoma statute previously discussed.[28] Immediately prior to trial, Sisk again dismissed Courville from the lawsuit, ostensibly "without prejudice." Hunt moved to dismiss the action against it, arguing that dismissal of the claim against its employee/agent operated as a release of Hunt under Oklahoma law. The trial court denied the motion, the matter went to trial, and Sisk was awarded a judgment of some $560,000. Hunt appealed, and the decision was affirmed by the Court of Civil Appeals. On appeal, the Oklahoma Supreme Court affirmed, but in doing so, announced that as to all future cases, release of the agent/employee in situations such as this would operate to release the master:

> We hold today the *ex lege* bar from the plaintiff's voluntary act (of a second dismissal of Courville) operates at common law as an effective release of Sisk's claim against the servant. It is the § 100 recommencement bar, raised by the plaintiff's own act of dismissing the servant that, in fact and in law, also extinguishes his claim against the vicariously liable master. When a servant is effectively released, his master, whose liability is solely derivative, stands released as well. Today's pronouncement is given purely prospective effect. It shall govern only those claims which will arise **after mandate has been issued herein.**[29]

The mandate in *Sisk* was issued in July of 2003, making the principles espoused therein applicable to the case at bar.

Any liability of Atlas for the tortious conduct of its agents and/or employees is vicarious

---

[27] 81 P.3d 55 (Okla. 2003) (hereafter "*Sisk*").

[28] Okla. Stat. Ann. tit. 12, § 100.

[29] *Sisk*, 81 P.3d at 62 (emphasis in original).

liability as a matter of law. The agents and employees of Atlas have been released from any liability they may have had to Claimants as a matter of law. The release of those agents and employees operates as a release of Atlas under Oklahoma law. Therefore, Claimants may not assert a claim against Atlas in this bankruptcy case. The motion for summary judgment filed by Milenkovic is well taken.

## Conclusion

The motion for summary judgment filed by Milos Milenkovic is sustained. As a result, the objection to the Finley Amended Claim is sustained and Claim No. 6 is disallowed in its entirety. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 29th day of April, 2010.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5853.2